In the Matter of the Claim of MARY MENGELE, Respondent, v. LIEBMANN BREWERIES, INC., et al., Appellants. WORKMEN's COMPENSATION BOARD, Respondent.

Third Department, May 23, 1961.

*Bernard F. Farley* for appellants.

*Israel, Adler & Ronca* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General (John J. Quinn* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

TAYLOR, J. Employer and its insurance carrier appeal from an award of the Workmen's Compensation Board, one member dissenting, which granted death benefits to the widow of a deceased brewery employee. Appellants contend that the fall which resulted in the employee's death did not arise out of and in the course of his employment, was suicidal and not accidental.

The employer's plant consisted of two buildings, identified in the record as G and H, which adjoined each other. Each was nine stories in height. A common stair well between them led to their roof through a door which was unlocked. A parapet of brick construction, topped by a concrete coping 15 inches in width, extending perpendicularly from the roof a distance of 52 inches rimmed its entire expanse.

The deceased was employed as a slager, an occupation concerned with the operation of the pumps and hoses which moved beer from one tank to another on the same and different floors of the buildings. On the date of his death, he had reported for work at 4:00 P.M. in Building G and was last seen by a co-worker in his office on the third floor of this building at about 8:00 P.M. Shortly thereafter his body, clad in work attire, was found on the concrete sidewalk of an interior street within the brewery grounds about five feet from Building H.

There was testimony by the safety director of the employer and an assistant medical examiner called, in his public capacity, to investigate the circumstances of the death that in the tar of a flashing which extended upward on the parapet about 18 inches from the roof level, at a point directly above the place where the body of the deceased was found, there were three fresh indentations corresponding in pattern to the cleats on the toes of his boots. There was also testimony by the latter that a subsequent inspection of the roof revealed that it was surfaced with gravel similar to material which he found on their soles. That the deceased was instantly killed by his descent from the roof of Building H to the pavement below seems to be clear and, in effect, the board has so found.

As the basis for their claim that the decedent had abandoned his employment, appellants argue that none of his duties required him to go to the roof of the building, that it contained no recreational facilities for use by employees of the brewery and that they had not been known to go there seeking temporary relief from excessive heat since its buildings were air-conditioned. A majority of the board has determined that the death arose out of and in the course of his employment.

The decedent's fall was unwitnessed. It occurred on his employer's premises during the hours of his employment. Only minutes before he had been actively pursuing it. The record demonstrates that his work was not confined to one of the two buildings which comprised the plant or to any particular part of either of them. His sphere of employment activity, it is reasonably inferable, took him to all parts of both. A temporary cessation of his work to go to an accessible roof was not an unreasonable incident to his employment. It may have been his purpose to seek "fresh air in order to refresh himself" (*Matter of Montgomery* v. *Bartholomay Milk Co.,* 260 N. Y. 664, 665) or to go there "for air and a smoke" (*Matter of McLellan* v. *International Paper Co.,* 269 App. Div. 800, motion for leave to appeal dismissed 294 N. Y. 967) or "to think out some problem connected with his work while he was on the roof."

(*Matter of Fuller* v. *Title Guar. & Trust Co.*, 223 App. Div. 173, 174.) Moreover, the testimony of the assistant brewmaster did not entirely exclude the possibility of excursions to the roof by employees for a "breath of air" on other than warm nights. The presumption contained in subdivision 1 of section 21 of the Workmen's Compensation Law justified the board's finding even though the presence of the deceased on the roof was unexplained. (*Matter of Graham* v. *Nassau & Suffolk Light. Co.*, 308 N. Y. 140; *Matter of Kleid* v. *Carr Bros.*, 300 N. Y. 270.)

The accident having occurred within the time and space boundaries of decedent's employment, the further statutory presumption that the deceased was not a suicide became operative "in the absence of substantial evidence to the contrary." (Workmen's Compensation Law, § 21, subd. 3; *Matter of Pierorazio* v. *Pettignano*, 3 A D 2d 616, motion for leave to appeal denied 2 N Y 2d 710.) There was here "substantial evidence to the contrary" which overcame the presumption that decedent's death resulted from an industrial accident. The record contains uncontradicted testimony by the medical examiner and safety director based on their investigations made soon after the discovery of the body of the deceased, including the inspection of the pertinent parts of the roof of the building and its protective barrier, that he could not have fallen to his death accidentally. The undisputed evidence of the existence of telltale boot cleat prints in the tar of the flashing along the base of the parapet directly above the place where his body was found leads to the inflexible inference that the deceased had climbed it. The height and construction of the wall and the width of its coping, about which there was no controversy at the hearing before the Referee, combined with the maximum estimate of decedent's stature demonstrate graphically the physical impossibility of a toppling over the parapet by the deceased as the result of a stumble, misstep or sudden illness. The medical examiner, in his report, certified the cause of decedent's death as "probable suicide". His official investigation disclosed that several years before the date of his death deceased had suffered a depression which had reoccurred within two or three weeks immediately preceding it and that on the day before he was killed he had consulted a physician who then found him "in an agitated state" and "worried about his job, that he was making mistakes". A tranquilizing drug was prescribed for his condition.

Thus, the statutory presumption was rebutted by substantial evidence uncontradicted in its essential aspects. Viewed in the light of the record as a whole, suicide is the only reasonable

inference to be drawn from the facts. (*Matter of McLaughlin* v. *John Hancock Mut. Life Ins. Co.*, 282 App. Div. 782; *Matter of Masse* v. *Robinson Co.*, 301 N. Y. 34, 37.)

The cases relied on by the respondent board involved unwitnessed occurrences in which the proof permitted the phenomenon of accidental death and, hence, are inapposite.

The award should be reversed and the claim dismissed, with costs to appellants against the Workmen's Compensation Board.

COON, J. P., GIBSON and REYNOLDS, JJ., concur; HERLIHY, J., concurs in following memorandum: I concur in the opinion of Justice TAYLOR and vote to reverse on the further ground that decedent being on the roof at the time was not within the scope of his employment.

Award reversed and claim dismissed, with costs to appellants against the Workmen's Compensation Board.